Clarence ELBERT

v.

Michael J. CUNNINGHAM, Warden, New Hampshire State Prison.

Civ. No. 85–245–D.

United States District Court, D. New Hampshire.

Aug. 9, 1985.

James E. Duggan, Concord, N.H., for plaintiff.

Tina Schneider, Office of Atty. Gen., Concord, N.H., for defendant.

## OPINION

DEVINE, Chief Judge.

Petitioner brings this application for writ of habeas corpus pursuant to 28 U.S.C. § 2254, claiming that his conviction on one count of attempted second-degree murder is constitutionally infirm. Petitioner is currently serving a sentence of 15 to 30 years for attempted murder, as well as a consecutive sentence of 10 years on the related conviction for felonious use of a firearm, not a subject of this petition.[1] Petitioner presents the following grounds for relief:

---

1. Petitioner is currently appealing his sentence of 10 years on the felonious use of a firearm charge following resentencing by the Superior Court as required by *State v. Elbert,* 125 N.H. 1, 16, 480 A.2d 854 (1984). Plaintiff has expressly informed this Court that he wishes to proceed with his current writ petition in spite of the risk that any successive petition concerning the felonious use of a firearm sentence might be barred by Rule 9(b), Rules Governing Habeas Corpus Cases Under Section 2254.

1. Petitioner's confession was erroneously admitted into evidence because the confession was procured in violation of his Fifth Amendment rights;

2. Petitioner's confession was erroneously admitted into evidence because the confession was procured in violation of his Sixth Amendment rights;

3. Petitioner's confession was erroneously admitted into evidence because it was procured in violation of his Fourteenth Amendment rights in that the confession was involuntary; and

4. There was insufficient evidence to prove that petitioner acted with premeditation and deliberation, and petitioner therefore was denied due process of law under the Fourteenth Amendment when the trial judge submitted the offense of attempted first-degree murder to the jury.

For the reasons stated below, the Court finds that petitioner's application for writ of habeas corpus must be denied.

*1. Fifth, Sixth, and Fourteenth Amendment Confession Claims*

██ Petitioner first argues that his confession was procured in violation of his Fifth and Sixth Amendment rights because after petitioner had invoked his right to counsel the New Hampshire police initiated a conversation concerning New Hampshire charges against petitioner. However, the Court finds that a review of relevant trial and suppression hearing testimony supports the conclusions of the trial judge and the New Hampshire Supreme Court that it was petitioner who initiated the conversation concerning his New Hampshire offenses and voluntarily waived his previously invoked Fifth and Sixth Amendment rights.

On November 13, 1981, the State of New Hampshire filed complaints in the Nashua District Court charging petitioner with attempted first-degree murder, possession of a firearm by a felon, and the felonious use of a firearm, causing warrants to be issued for petitioner's arrest. The FBI later obtained warrants for petitioner's arrest as a fugitive from justice. Petitioner was later arrested in New York and detained until December 31, 1981, when he waived extradition and submitted to the custody of Captain Robert Barry and Detective Donald Hamel of the Nashua, New Hampshire, Police Department. At the New York judicial hearing in which plaintiff waived extradition, plaintiff's counsel requested that the court instruct these Nashua officers to refrain from questioning petitioner until he had returned to New Hampshire and consulted his attorney there. This request was refused on the ground that the judge had no jurisdiction outside the state boundaries.

Captain Barry, Detective Hamel, and petitioner traveled by automobile to New Hampshire. Any conversation between the police and officers and defendant while in New York City concerned finding the proper travel routes. M.S. Tr. 41, 55.[2] After leaving New York City, the three men engaged in "general conversation", during which discussions petitioner inquired as to what specific charges were pending against him in New Hampshire and what sentence those charges might bring. Captain Barry described the conversation as follows:

> Talking about when we were free of Riker's and back on track, then the conversation was general conversation, *Clarence wanted to know specifically what he was charged with. He wanted to know what the time was that he could do.* We talked in general. We talked about the incident in New Hampshire. We would go off to things that Clarence had been involved with in other states or in the Mid-West or what-have-you. *It was not specific, but it would be brought back to what happened in New Hampshire and would be brought back there by Clarence.*

M.S. Tr. 55–56 (emphasis added). The three men then stopped to eat at a highway restaurant on Connecticut. Captain Barry read petitioner his *Miranda* rights after returning to the vehicle to resume the drive

---

**2.** Transcript of July 12, 1982, hearing on Motion to Suppress.

to New Hampshire. Petitioner responded that he understood the rights, that he had no problems talking to the police officers about the New Hampshire incidents without an attorney present. Trial Tr. 223–24. Petitioner subsequently made incriminating statements which were later admitted at trial. At some point in the conversation, after petitioner had made these incriminating statements, "towards the tail end of our conversations", petitioner said, "I'd like to talk to my lawyer when I get back, and then maybe we'll sit down and we'll talk." M.S. Tr. 57–58.

 In evaluating petitioner's Fifth Amendment claims, the Court begins with the cardinal rule that the Fifth Amendment requires the exclusion of any statement made by an accused person during custodial interrogation unless he has been advised of his right to remain silent and to have an attorney present during questioning and the accused has voluntarily waived those rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Porter*, 764 F.2d 1, 6–7 (1st Cir.1985). Once an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established except by showing that counsel had been provided to him or that the accused himself initiated further communication, exchanges, or conversations with the police. *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981). A valid waiver cannot be established by showing only that the accused responded to further police-initiated custodial interrogation, even if the accused also has been advised of his rights. *Id.* at 484, 101 S.Ct. at 1884. In this case, the Court assumes that petitioner effectively invoked his Fifth Amendment right to counsel through his New York counsel, who requested, in the presence of the New Hampshire officers, that no further interrogation take place until after petitioner had consulted with his New Hampshire counsel. The critical issue to be determined, therefore, is: Who initiated the conversation concerning petitioner's pending New Hampshire charges?

The fact pattern of the instant case is strikingly similar to that of *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), wherein the United States Supreme Court ruled that an accused person had initiated a conversation with police, thereby effectively waiving his previously-invoked Fifth Amendment right to counsel during custodial interrogation. In *Oregon v. Bradshaw, id.*, an accused person had been read his *Miranda* rights and had expressly invoked his right to counsel, but just before or during an automobile transfer to a county jail, the accused inquired of a police officer, "Well, what is going to happen to me now?" The police officer responded by saying that the accused did not have to talk with the officer and that any conversation would have to be at petitioner's own free will. The accused replied that he understood, and a conversation ensued in which the accused agreed to the police officer's suggestion that the accused take a polygraph examination. Subsequent to the polygraph examination, plaintiff made incriminating statements. The Court held that the accused had initiated a conversation and dialogue, as his inquiry was not a routine or necessary inquiry arising out of the custodial relationship (i.e., request for water), but rather evinced a willingness on his part to open up a "generalized discussion" relating directly or indirectly to the investigation. *Id.* at 1045–46, 103 S.Ct. at 2835.

In this case, the testimony supports a finding that it was petitioner who initiated a dialogue with the New Hampshire officers relating to the investigation, when he inquired about the nature of the New Hampshire charges and the potential sentences connected with those charges. Once petitioner had initiated this dialogue, the door was open for further custodial interrogation without counsel, and the New Hampshire officers, after offering petitioner his *Miranda* rights, properly stepped through that door. The fact that petitioner, toward the end of the conversation and after incriminating statements had been made, spoke of further conversations with

the police after consultation with his attorney, does not alter the effectiveness of his earlier waiver. In fact, petitioner's statement concerning further police discussions after legal consultation may fairly be interpreted as going to petitioner's actual shooting of the victim, rather than his theft and subsequent disposal of the weapon, the subjects of his incriminating statements.

■ The second prong of the *Edwards* test is whether the accused, having initiated further communications on the subject matter of the investigation, has knowingly and intelligently waived his right to counsel. *Edwards v. Arizona, supra,* 451 U.S. at 483, 486 n. 9, 101 S.Ct. at 1884, 1885 n. 9; *see also Oregon v. Bradshaw, supra,* 462 U.S. at 1044–45, 103 S.Ct. at 2834 (inquiries as to initiation of conversation and as to waiver of previously asserted right to counsel are separate). This second determination depends "upon the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused." *Oregon v. Bradshaw, supra,* 462 U.S. at 1046, 103 S.Ct. at 2835, *quoting Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). The trial court found that defendant had voluntarily, understandingly, and knowingly effected a waiver of his *Miranda* rights given the circumstances surrounding his statements, including petitioner's initiation of the conversation concerning the New Hampshire charges, petitioner's statement that he had "no problem" talking with police following Captain Barry's renewal of the *Miranda* warnings, and the fact that petitioner was a "street-wise" individual. M.S. Tr. 103–94. The Court finds nothing in the record to dispute the trial court's conclusions, "based as they are upon the trial court's firsthand observation of the witnesses to the events involved." *Oregon v. Bradshaw, supra,* 462 U.S. at 1046–47, 103 S.Ct. at 2835.

■ Petitioner also argues that his Fourteenth Amendment rights were violated because the police officers offered false promises of concurrent sentences to persuade petitioner to make a confession, thereby rendering petitioner's statements involuntary. However, the Court finds that the trial court's findings on this issue are supported by a comprehensive reading of the record, and should not be disturbed. The evidence supports the trial court's findings that any discussion of concurrent sentences occurred *after* petitioner's initiation of the investigation discussion and *after* petitioner voluntarily waived his right to counsel, but that, in any event, the police officers' discussion of the potential benefits of voluntary statements did not rise to the level of a *quid pro quo* promise of leniency in return for confession. M.S. Tr. 104–05. Again the trial court properly took into account petitioner's history of contact with the police and the criminal justice system, determining that petitioner would not have interpreted these police statements as a guarantee of leniency. M.S. Tr. 105. *See id.* at 1046, 103 S.Ct. at 2835.

Therefore, the Court concludes that petitioner's custodial statements were not obtained in violation of his Fifth, Sixth, or Fourteenth Amendment rights. There being no constitutional violation, the trial court properly admitted petitioner's statements into evidence. Petitioner's application for writ of habeas corpus is therefore denied as to the first three requested grounds for relief.

## 2. Sufficiency of the Evidence

■ Petitioner's fourth ground for relief argues that there was insufficient evidence to prove that petitioner acted with premeditation and deliberation and therefore submission of the first-degree murder charge to the jury tainted the ultimate verdict of guilty on the lesser-included manslaughter offense, thereby violating petitioner's Fourteenth Amendment rights.[3] Petitioner claims that the trial testimony does not support the findings of the New Hampshire

---

**3.** While petitioner does not expressly argue this "tainting" theory in this habeas petition, the Court assumes that his Fourteenth Amendment

jury charge arguments parallel those presented to the New Hampshire Supreme Court in *State v. Elbert, supra,* 105 N.H. at 11, 480 A.2d 854.

Supreme Court, which held that the issue was properly submitted to the jury since the jury could have found beyond a reasonable doubt that defendant had time for "some reflection and consideration upon the ... choice to kill or not to kill, and ... the formation of a definite purpose to kill." *Id.*, 125 N.H. at 11–12, 480 A.2d 854, *quoting State v. Greenleaf*, 71 N.H. 606, 614, 54 A. 38 (1902). After review of the trial testimony, this Court concludes that submission of the first-degree murder charge to the jury did not violate petitioner's constitutional rights.

■ Like the New Hampshire Supreme Court, this Court does not reach the issue of the "tainting influence" of the first-degree murder charge, as the Court finds that charge was properly submitted to the jury for consideration. The standard for proper submission of a particular charge to the jury must logically be found in the standard controlling a potential conviction on that charge: Viewing the evidence in the light most favorable to the prosecution, could any rational trier of fact have found the essential elements of the crime beyond a reasonable doubt? *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Elbert, supra*, 125 N.H. at 12, 480 A.2d 854.

Plaintiff claims that the trial testimony did not support a finding of the premeditation or deliberation element required for an attempted first-degree murder conviction. New Hampshire law provides that a person shall be guilty of first-degree murder, or in this case attempted first-degree murder,[4] where that person acts purposely to cause the death of another. RSA 630:1–a I(a). "Purposely" is defined to mean that "the actor's conscious object is the death of another, and that his act or acts in furtherance of that object were deliberate and premeditated." RSA 630:1 I. The New Hampshire Supreme Court has described the required state of mind as follows:

'There must be not only an intention to kill, but there must also be a deliberate and premeditated design to kill. And when the time is sufficient for this, it matters not how brief it is. The human mind acts with celerity which it is sometimes impossible to measure; and whether a deliberate and premeditated design to kill was formed, must be determined from all the circumstances of the case.' 'The questions for the jury are: Had the slayer space and opportunity for reflection? Did he think over what he was about to do? Did he coolly form a settled purpose? Was his mind sedately and considerately made up to take life? If these questions be answered in the affirmative, the verdict must be murder in the first degree.'

*New Hampshire v. Greenleaf, supra*, 71 N.H. at 613–14, 54 A. 38 (citations omitted). *See also State v. Elbert, supra*, 125 N.H. at 11–12, 480 A.2d 854.

The evidence offered in the instant case could have supported a finding of premeditation beyond a reasonable doubt by a rational trier of fact. It could have been found that defendant had sufficient time for reflection and consideration, given that the victim testified that she first heard rustling, then took a few steps, and then was threatened, at which time she looked briefly at her attacker and then began to run before she was shot. Trial Tr. 96–98. Thus, the petitioner had "sufficient space and opportunity for reflection". Furthermore, the facts that petitioner used a gun and shot the victim in the head from behind could warrant an inference on the part of the jury that petitioner deliberately attempted to inflict a lethal wound on the victim. *See State v. Greenleaf, supra*, 71 N.H. at 614–15, 54 A. 38. Therefore, the Court finds that there was sufficient evidence to submit the first-degree murder charge to the jury for consideration, and therefore petitioner's habeas corpus appli-

---

4. N.H. RSA 629:1 provides that a person shall be guilty of an "attempt to commit a crime if, with a purpose that a crime be committed, he does or omits to do anything which, under the circum-stances as he believes them to be, is an act or omission constituting a substantial step toward the commission of the crime."

cation must be denied on this requested ground for relief.

In sum, the Court finds that petitioner does not succeed on any of the four stated grounds for relief, and, accordingly, his petition for writ of habeas corpus must be denied.

SO ORDERED.