**UNITED STATES COURT OF APPEALS**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

Patrick J.  Fisher, Jr.                                                                          Elisabeth A. Shumaker
Clerk                                                                                              Chief Deputy Clerk

March 14, 2000


**TO:**   ALL RECIPIENTS OF THE OPINION

**RE:**   99-5021, *Pickens v. Gibson*
          Originally filed March 7, 2000
          Vacated March 8, 2000

The attached opinion is reissued following its withdrawal on March 8, 2000. The opinion is reissued without modification.  A copy of the reissued opinion is attached.

Sincerely,

Patrick Fisher, Clerk of Court


By:   Keith Nelson
      Deputy Clerk


encl.

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 14 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

DARRIN LYNN PICKENS,

          Petitioner-Appellant,

v.

GARY GIBSON, Warden, Oklahoma
State Penitentiary,

          Respondent-Appellee.

No. 99-5021

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 96-CV-984-H)

Vicki Ruth Adams Werneke, Assistant Federal Public Defender, Death Penalty
Federal Habeas Corpus Division, Oklahoma City, Oklahoma, for
Petitioner-Appellant.

Robert L. Whittaker, Assistant Attorney General (W.A. Drew Edmondson,
Attorney General of Oklahoma with him on the brief), Criminal Division,
Oklahoma City, Oklahoma, for Respondent-Appellee.

Before **TACHA** , **BALDOCK** , and **EBEL** , Circuit Judges.

**TACHA** , Circuit Judge.

Petitioner appeals the district court's denial of habeas relief, <u>see</u> 28 U.S.C. § 2254, from his Oklahoma first degree felony murder conviction and death sentence. Petitioner received a certificate of appealability, <u>see</u> 28 U.S.C. § 2253(c), on the following issues: 1) his post-arrest statement was unconstitutionally obtained; 2) the trial court admitted an unconstitutionally obtained videotaped confession during sentencing; 3) prosecutorial misconduct; and 4) ineffective assistance of trial counsel. We affirm petitioner's conviction, but we vacate his death sentence.

I.    FACTS

An armed robbery occurred at a convenience store in Tulsa County, Oklahoma (the Berryhill Circle K) at approximately 10:30 P.M. on February 8, 1990. The clerk was shot several times and eventually died from her wounds. The robber got away with thirty-two dollars.

At approximately 5:15 A.M. the next morning, another Tulsa convenience store was robbed (the Union Circle K). The clerk there was also shot several times, but survived and was able to call police and describe the gunman. Police apprehended petitioner minutes later, after a car chase. Petitioner matched the wounded clerk's description of the robber. Inside petitioner's car, police found a Circle K bag with the thirteen dollars cash and postage and food stamps taken from the Union Circle K, as well as $160 taken from the clerk. In addition, police

found a gun and two pairs of gloves purchased from that store immediately prior to the robbery. After his arrest, petitioner confessed to committing both armed robberies and shooting both clerks.

The jury convicted petitioner of first degree felony murder, resulting from the first robbery, and robbery with a firearm, shooting with intent to kill, and assault with intent to kill, all after former conviction of a felony, resulting from the second robbery.

At sentencing, the State charged, and the jury found, three aggravating circumstances: 1) petitioner had previously been convicted of a violent felony; 2) he committed the murder to avoid a lawful arrest or prosecution; and 3) he presents a continuing threat to society. The jury sentenced petitioner to death on the felony murder conviction. In addition, the jury sentenced petitioner to fifty years' imprisonment for the robbery, and ninety-nine years each for assault and shooting with intent to kill. The Oklahoma Court of Criminal Appeals affirmed the convictions and sentences on direct appeal, see Pickens v. State, 850 P.2d 328 (Okla. Crim. App. 1993), cert. denied, 510 U.S. 1100 (1994), and also affirmed the denial of state post-conviction relief, see Pickens v. State, 910 P.2d 1063 (Okla. Crim. App. 1996).

II.    STANDARDS OF REVIEW

Because petitioner filed his habeas petition on October 28, 1996, after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), that Act governs this appeal. See, e.g., Medlock v. Ward, 200 F.3d 1314, 1318 (10th Cir. 2000). Petitioner will not be entitled to habeas relief unless he can establish that a habeas claim adjudicated by the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" Supreme Court law, or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2). [1] This court will presume the correctness of state court findings of fact, unless petitioner is able to rebut that presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

"If the claim was not heard on the merits by the state courts, and the federal district court made its own determination in the first instance, we review the district court's conclusions of law de novo and its findings of fact, if any, for clear error." LaFevers v. Gibson, 182 F.3d 705, 711 (10th Cir. 1999).

---

[1] Federal courts have adopted different interpretations of § 2254(d)(1)'s standards for reviewing habeas claims. See, e.g., Smallwood v. Gibson, 191 F.3d 1257, 1265 n.2 (10th Cir. 1999), citing cases. The Supreme Court has granted certiorari to consider the proper application of these standards. See Williams v. Taylor, 119 S. Ct. 1355 (1999). We need not further define those standards here because "the outcome of this appeal would be the same under any possible interpretation of the language at issue." Paxton v. Ward, 199 F.3d 1197, 1204 (10th Cir. 1999).

-4-

## III.   POST-ARREST STATEMENT

Petitioner argues that police obtained his inculpatory post-arrest statement in violation of his constitutional rights to remain silent and have an attorney present during questioning,    see Miranda v. Arizona  , 384 U.S. 436, 478-79 (1966), and that his statement was not voluntary, knowing and intelligent.        See Oregon v. Bradshaw , 462 U.S. 1039, 1044, 1046 (1983) (plurality) (recognizing these two distinct issues).

The record indicates that, after petitioner's arrest, Tulsa police officer Dale White gave petitioner his    Miranda  warnings.  Petitioner refused to speak with police.  He did ask about the charges against him and asserted that he had not killed anyone.  Officer White then took petitioner to the police station for booking.  There Officer White again advised petitioner of his        Miranda  rights. Petitioner indicated that he understood his rights, but declined to sign an acknowledgment and waiver form.  Petitioner asked several more times with what he was being charged.

While he was awaiting booking, several Tulsa County sheriff's detectives had a brief conversation with petitioner, after again advising him of his        Miranda rights. (The first robbery had occurred within the jurisdiction of the Tulsa sheriff's department; the second, in the Tulsa police department's jurisdiction.) Petitioner refused to talk to these detectives.

-5-

When the sheriff's detectives left, petitioner asked Officer White if they had been from Creek County. Officer White told him they were not. Officer White then indicated that he was ready to book petitioner into jail. Petitioner asked again on what charges he would be booked. After responding, Officer White noted that petitioner was facing some pretty heavy charges and asked petitioner if he would like to talk to any of the officers so he could explain his side of the story. Petitioner agreed to talk to Sergeant Allen, who previously had taken blood samples from petitioner. Petitioner eventually confessed to Sergeant Allen.

A.    <u>Miranda</u> Rights

The trial court found that petitioner had invoked his right to counsel during his brief discussion with the Tulsa County detectives. This is a factual finding, which this court presumes to be correct. <u>See</u> <u>Hawkins v. Hannigan</u>, 185 F.3d 1146, 1153 (10th Cir. 1999).

"[H]aving expressed his desire to deal with the police only through counsel, [an accused] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." <u>Edwards v. Arizona</u>, 451 U.S. 477, 484-85 (1981); <u>see also, e.g.</u>, <u>Davis v. United States</u>, 512 U.S. 452, 458 (1994). If police initiate subsequent contact without the

presence of counsel, petitioner's statement will be presumed involuntary, even where his statements would otherwise be deemed voluntary under traditional standards.   See McNeil v. Wisconsin  , 501 U.S. 171, 177 (1991).  It is of no moment that a police officer seeking to interrogate the suspect further is unaware of the suspect's prior invocation of his right to counsel.       See Arizona v. Roberson , 486 U.S. 675, 687-88 (1988).

The trial court determined that it was petitioner who had reinitiated communication with police, after previously invoking his right to counsel, by asking Officer White what charges were being brought against him.  This a factual finding,   to which this court affords a presumption of correctness under 28 U.S.C.  § 2254(e).  See Cooks v. Ward , 165 F.3d 1283, 1288 (10th Cir. 1998) (in pre-AEDPA case, reviewing for clear error district court's finding that suspect initiated conversation with police),     cert. denied , 120 S. Ct. 94 (1999).  On direct appeal, the Oklahoma Court of Criminal Appeals, applying       Edwards  and Bradshaw , affirmed.   See Pickens , 850 P.2d at 333-34.

In Bradshaw , the accused invoked his right to counsel, terminating police interrogation.   See 462 U.S. at 1041-42.  As he was being transported to jail, however, the suspect asked a police officer "'Well, what is going to happen to me now?'"  Id. at 1042.  The officer reminded the suspect that he did not have to talk, noting the suspect had requested an attorney.      See id.  The suspect indicated

he understood and then discussed with the officer where the officer was taking him and with what crimes he was being charged. See id. The officer suggested, and the suspect acquiesced, to a polygraph test, which ultimately led to the suspect's confession. See id.

A plurality of the Supreme Court held that "[t]here can be no doubt in this case that in asking, 'Well, what is going to happen to me now?', [the defendant] 'initiated' further conversation . . . ." Id. at 1045. The Court further held that

> [a]lthough ambiguous, the [defendant's] question . . . evinced a willingness and a desire for a generalized discussion about the investigation; it was not merely a necessary inquiry arising out of the incidents of a custodial relationship. It could reasonably have been interpreted by the officer as relating generally to the investigation. . . . On these facts we believe that there was not a violation of the Edwards rule.

Id. at 1045-46.

Here, petitioner has failed to rebut, by clear and convincing evidence, the presumption of correctness afforded the state court's factual finding that petitioner reinitiated communication with officers by asking with what he was being charged. Further, the state courts' application of Edwards and Bradshaw was not contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. Cf. Elbert v. Cunningham, 616 F. Supp. 433, 436 (D. N.H. 1985) (determining suspect initiated communication with police, after

-8-

invoking his Fifth Amendment right to counsel, by asking officers about nature

of charges he faced and possible sentences connected with those charges).

> B. Voluntariness of Post-Arrest Statement

> Since there was no violation of the Edwards rule . . . , the next inquiry [i]s whether a valid waiver of the right to counsel and the right to silence had occurred, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with authorities. . . . [T]his determination depends upon the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused.

Bradshaw , 462 U.S. at 1046 (citation, quot    ations omitted).  "A waiver is

voluntary if the record demonstrates it '(1) . . . was a product of a free and

deliberate choice rather than intimidation, coercion, or deception, and (2) . . . was

made in full awareness of the nature of the right being waived and the

consequences of waiving.'"   Cooks ., 165 F.3d at 1288 (quoting   United States v.

Bautista , 145 F.3d 1140, 1149 (10th Cir.),    cert. denied , 119 S. Ct. 255 (1998))   .

The Oklahoma Court of Criminal Appeals, citing,     e.g. , Bradshaw ,

determined that petitioner had knowingly and intelligently waived his right to

counsel, prior to making this statement.    See Pickens , 850 P.2d  at 334.

Police officers read petitioner his    Miranda  rights immediately after arrest

and again after he had been transported to the Tulsa police station for booking.

In addition, the Tulsa County detectives advised him of his        Miranda  warnings

prior to trying to speak to him. Petitioner's initial refusal to make a statement and his request for an attorney indicate he "understood . . . both the nature and consequences of his right to remain silent and his right to counsel." Cooks, 165 F.3d at 1288. There is no indication that police pressured or coerced petitioner. Therefore, the state courts' determination that petitioner's waiver of his Miranda rights was voluntary, knowing and intelligent was not contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. See Cooks, 165 F.3d at 1288-89 (pre-AEDPA case; waiver was voluntary, knowing and intelligent where officers advised petitioner several times of Miranda rights, petitioner demonstrated his understanding of those rights by initially invoking them, and it was petitioner who had initiated further communication with officer); see also, e.g., Clayton v. Gibson, 199 F.3d 1162, 1173 (10th Cir. 1999).

IV.    ADMISSION OF CREEK COUNTY CONFESSION

Among its evidence admitted at sentencing, the State presented petitioner's videotaped confession to a third armed robbery of a convenience store (the Creek County robbery), during which he had again shot and killed the clerk. This robbery had occurred four days prior to the Tulsa robberies at issue in this case. At the time of this capital proceeding, petitioner's prosecution for the Creek County robbery and murder remained pending. Petitioner was subsequently convicted of those crimes. The Oklahoma Court of Criminal Appeals, however,

-10-

reversed petitioner's Creek County convictions, after determining that the videotaped confession had been obtained in violation of petitioner's constitutional rights. See Pickens v. State , 885 P.2d 678, 680-82, 684 (Okla. Crim. App. 1994), overruled on other grounds by Parker v. State , 917 P.2d 980, 986 & n.4 (Okla. Crim. App. 1996).

In this case, petitioner challenges the trial court's admission, during sentencing, of that videotaped confession to the Creek County robbery and murder. The parties do not dispute, and the state appellate court and the federal district court both held, that admission of this confession was constitutional error. The Oklahoma Court of Criminal Appeals, however, further held that admission in this case of the unconstitutionally obtained confession during sentencing was "harmless beyond a reasonable doubt," in light of the other, overwhelming evidence supporting the continuing threat aggravating circumstance. Pickens , 910 P.2d at 1067-68. Although the Oklahoma appellate court did not cite federal authority in making this determination, it essentially applied the Chapman v. California , 386 U.S. 18, 24 (1967), harmless error analysis required for direct review. See Brecht v. Abrahamson , 507 U.S. 619, 636 (1993).

AEDPA provides in part that habeas corpus relief shall not be granted from state convictions "unless the adjudication of the claim . . . involved an

-11-

unreasonable application of [] clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). It is not disputed that Chapman sets forth the clearly established standard for evaluating instances of constitutional error and that the Oklahoma Court of Criminal Appeals correctly articulated the Chapman standard. Thus, our inquiry is limited to whether the application of that standard was unreasonable when the Oklahoma Court of Criminal Appeals determined that this error was harmless beyond a reasonable doubt. See LaFevers, 182 F.3d at 716 (interpreting AEDPA to require examination of an Oklahoma appellate court's determination of harmless error for reasonableness).

In support of the three charged aggravating factors, the State incorporated the first-stage evidence. In addition to the videotaped confession, the State also introduced a ski mask and a pair of sunglasses found in petitioner's car at the time of his arrest, arguing that, had petitioner wanted to disguise himself, he could have, thus eliminating any need to kill the clerks. The State also presented judgments and sentences documenting petitioner's two prior felony convictions for armed robbery and one prior felony conviction for possession of a sawed off shotgun. Petitioner stipulated that all three of these convictions involved a threat of violence. In addition, a police officer testified that, after his confession to

these crimes, petitioner stated that, except for driving without a license, he had done nothing wrong that night.

In mitigation, petitioner presented the testimony of his mother, two sisters and his cousin. These witnesses testified to petitioner's physically and emotionally impoverished upbringing, his mother's emotional and verbal abuse, the absence of his father, the drowning death of his best friend, petitioner's serious injuries suffered in a fire, and the death of his girlfriend. They also testified to several instances when petitioner had to be physically restrained by family members after he had taken illicit drugs. His special education teacher testified concerning petitioner's limited mental abilities.

A psychologist testified to the following: Petitioner was borderline mentally retarded, with an overall IQ of 77. He possessed only a marginal ability to function, making decision making and everyday tasks very difficult. His social functioning was deficient, and he had difficulty forming close relationships. He was not able to think as quickly or process information as accurately as most people. It was the psychologist's opinion that the death of petitioner's girlfriend began petitioner's downward spiral into drugs and antisocial behavior. The psychologist further opined that petitioner was remorseful and would not present a continuing threat if he remained incarcerated.

Against this background of aggravating and mitigating evidence, petitioner's videotaped confession was the first and only time the jury received information that petitioner had committed another armed robbery resulting in murder, identical to the crimes charged in this Tulsa prosecution, and occurring only four days prior to these Tulsa shootings. It was also the first and only time the jury heard from petitioner.

"[I]t would have taken only a single juror to preclude imposition of the death sentence." Bryson v. Ward , 187 F.3d 1193, 1205 (10th Cir. 1999), petition for cert. filed , (U.S. Feb. 7, 2000) (No. 99-8086). In light of these circumstances, we have "grave doubt" as to the effect of this unconstitutionally obtained confession on the jury's sentencing decision. O'Neal v. McAninch , 513 U.S. 432, 435 (1995); see Paxton , 199 F.3d at 1219. We, therefore, hold that the Oklahoma Court of Criminal Appeals' harmless error determination was not reasonable and grant petitioner habeas relief from his death sentence on this basis.

V. PROSECUTORIAL MISCONDUCT

On appeal, petitioner alleges several instances of prosecutorial misconduct occurring during both the guilt and sentencing stages of this capital proceeding. The Oklahoma appellate court denied relief on these claims, addressing some in detail and indicating, as to others, that, although that court had "meticulously reviewed every claim of prosecutorial misconduct raised by Appellant[,] we find

-14-

it [un]necessary to recite that review here." Pickens , 850 P.2d at 341. The Oklahoma Court of Criminal Appeals further held that those alleged incidents of prosecutorial misconduct were not "so prejudicial as to adversely affect the fundamental fairness and impartiality of the proceedings." Id. at 343.

Initially, we reject petitioner's assertion that this court need not defer to the state court's summary disposition of some of his prosecutorial misconduct claims. "[W]e owe deference to the state court's *result* , even if its reasoning is not expressly stated." See Aycox v. Lytle , 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, "we must uphold the state court's summary decision unless our independent review of the record and pertinent federal law persuades us that its result contravenes or unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." Id. at 1178.

A.    Comment on Right to Remain Silent

Petitioner argues that, during voir dire and first-stage closing argument, the prosecutor improperly commented on petitioner's post-arrest silence and his right not to testify, in violation of the Fifth Amendment. Where, as here, petitioner alleges that a prosecutor's comments improperly infringed on a specific constitutional right, petitioner need establish only the infringement of that

-15-

particular constitutional right, and need not show that the comment rendered the entire trial fundamentally unfair.    See Paxton , 199 F.3d at 1217.

"The state may not use a defendant's exercise of his right to remain silent to obtain his conviction."    Jones v. Stotts , 59 F.3d 143, 146 (10th Cir. 1995) (citing Supreme Court cases).  This court must, therefore,

> determine whether there has been an impermissible comment on a defendant's right to remain silent . . . by determining whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the defendant's right to remain silent.  The contested use of the statement must be considered in the context in which the use was made.

United States v. Toro-Pelaez   , 107 F.3d 819, 826-27 (10th Cir. 1997) (citations, quotation omitted);   see also  United States v. Mora   , 845 F.2d 233, 235 (10th Cir. 1988) (same test applies whether prosecutor is commenting on defendant's post-arrest silence or his decision not to testify at trial).  Error in permitting the prosecutor to comment upon petitioner's right to silence is subject to a harmless error analysis.   See Brecht , 507 U.S. at 628-29 (comment on post-arrest silence).

During voir dire, the prosecutor made these comments:

> One of the things that I don't think has been talked about enough in these proceedings is the rights that the defendant has. . . . He . . . has what we commonly refer to as the Fifth Amendment right, and I think a lot of us are familiar with . . . the old Hawaii Five 0, where they say, "Book him, Dano," and they read him the [M]iranda rights, you have the right to remain silent, and things like that.
>     . . . .

. . . That also extends into the courtroom where he does not have to get up and say anything. He has the right to sit there and do nothing throughout this trial.

. . . .

. . . And if he chooses to sit there and exercise his right to remain silent, he can do that. Witness after witness, he can have no questions and do nothing, and you can't hold that against him. . . .

. . . .

. . . And even if [petitioner] sits there and does nothing throughout the trial, you won't hold that against him?

. . . .

. . . [A]s a juror, . . . you're going to be called upon to make a decision, a very important decision, what may be the most significant decision you'll ever make in your lives; and when you want to make a decision like that, you want to say, I want to hear both sides of the story, I want to hear everything that happened, I want to hear both sides.

. . . .

. . . And you understand that may not happen here in this trial. You may only hear our office present evidence, because we have the burden.

. . . .

. . . But you can't hold that against [petitioner]. You have to hold us to our burden to prove to you that the crime occurred.

Trial tr. at 184-86.

The Oklahoma Court of Criminal Appeals, applying primarily state law, determined that "[w]hile the comment . . . comes dangerously close to causing a reversal of these convictions and a new trial, when compared to the exceptional amount of evidence against [petitioner], we find it did not contribute to the conviction and is therefore harmless error" under Chapman, 386 U.S. 18. Pickens, 850 P.2d at 341-42.

-17-

The "mere mention" of petitioner's rights "is not per se prohibited; rather, it is the prosecutor's exploitation of a defendant's exercise of his right to silence which is prohibited." Jones, 59 F.3d at 146. Further, the prosecutor's statements here accurately reflect the law. Cf. Green v. Johnson, 160 F.3d 1029, 1038 (5th Cir. 1998) (rejecting argument that prosecutor's statements during voir dire recognizing defendant's right to remain silent and explaining government cannot make defendant testify were improper comment on defendant's rights; noting that, while comments regarding defendant's failure to testify made *after* introduction of evidence at trial might violate Fifth Amendment, under Texas state law, prosecutor can inquire during voir dire whether prospective jurors will be prejudiced against State by absence of defendant's live testimony), cert. denied, 525 U.S. 1174 (1999). Nonetheless, even if these statements were improper, we cannot say that the Oklahoma court was unreasonable in determining that their effect was harmless under Chapman.

Petitioner also asserts the prosecutor, during his first-stage closing argument, improperly commented upon petitioner's decision not to testify at trial when he referred to the evidence of petitioner's guilt as "uncontradicted and uncontroverted." Trial tr. at 634, 638. Such remarks, if they "concern matters that could have been explained only by the accused, . . . give rise to an innuendo that the matters were not explained because [petitioner] did not testify" and, thus,

-18-

amount to indirect comment on the defendant's failure to testify.     United States v.

Barton , 731 F.2d 669, 674 (10th Cir. 1984).  A prosecutor, however, "is

otherwise free to comment on a defendant's failure to call certain witnesses or

present certain testimony."     Trice v. Ward , 196 F.3d 1151, 1167 (10th Cir. 1999).

In any event, in light of the overwhelming evidence of petitioner's guilt, these

remarks were also harmless.

B.     Caldwell [2] violation

Petitioner argues that the prosecutor, during his second-stage closing

argument, improperly diminished the jury's sense of responsibility as to its

sentencing decision.     See Caldwell , 472 U.S. at 323, 328-29.  In her closing

argument, defense counsel indicated that the prosecutor wanted the jurors to

execute petitioner.  In response, the prosecutor asserted

> . . . You're not the executioners.  See, [defense counsel's]
> wanting to put a guilt trip on you, make you feel emotional.  Tell
> you, you have to live with this the rest of your life.  I am, too.  You
> would not even consider this evidence. You wouldn't be able to
> consider this evidence, if I hadn't prepared the case, and made the
> decision to ask for the death penalty, and made the argument --
>      . . . .
>      . . . that if you return a verdict of guilty and give him the death
> penalty, I'm going to have some responsibility in that
> myself. . . . [A]t least I made some decisions that got it here; and it
> wouldn't have gotten here, had I not made those decisions.
>      . . . .

---

[2]     Caldwell v. Mississippi   , 472 U.S. 320 (1985).

. . . [Petitioner's] the man that brought you in here. He's responsible for all this. Not me, not you. And you will have to live with this decision in this sense. I did or did not do what was right, but you don't have to live with the decision that you're going to execute him. You're not. You're not killing him. You're not executing him.

. . . .

. . . You're deciding whether he should be given the death penalty.

Trial tr. at 858-59.

The Oklahoma Court of Criminal Appeals determined that

[w]hen read in isolation, the prosecutor's remarks . . . would seem to violate Caldwell . However, when read in context of the entire closing argument, it is clear that the prosecutor was responding to the argument of defense counsel and did not in any way mislead the jury in an attempt to insulate them from their decision or diminish[] their responsibility in determining the appropriate punishment.

Pickens , 850 P.2d at 343.

The state court's application of Caldwell was not unreasonable. See Moore v. Gibson , 195 F.3d 1152, 1174-75 (10th Cir. 1999) (prosecutor's remarks indicating that jurors were only one little cog in community and that prosecutor had to determine initially that case was appropriate capital case before it could be brought before jury did not mislead jurors concerning their responsibility for determining punishment); Sellers v. Ward , 135 F.3d 1333, 1343 (10th Cir. 1998) (no Caldwell error where prosecutor suggested he approved of death penalty and many hurdles had to be jumped before capital proceeding occurred); see also, e.g., Fox v. Ward , 200 F.3d 1286, 1300 (10th Cir. 2000).

-20-

Even if these remarks did violate Caldwell, there is not a "substantial possibility that the prosecutor's statements, taken in context, affected the sentencing decision." Hopkinson v. Shillinger, 888 F.2d 1286, 1295 (10th Cir. 1989), overruling on other grounds recognized by Davis v. Maynard, 911 F.2d 415, 417 (10th Cir. 1990); see also Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir. 1998), cert. denied, 119 S. Ct. 1266 (1999).

C.    General Comments

On appeal, petitioner asserts numerous instances of prosecutorial comment which, although not implicating a specific constitutional right, singularly or cumulatively deprived him of due process. Because these allegations do not implicate any specific constitutional right, petitioner must establish that the prosecutor's remarks rendered petitioner's trial fundamentally unfair. See Paxton, 199 F.3d at 1217; see also Clayton, 199 F.3d at 1173 (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).

Petitioner challenges the following remarks: During voir dire, the prosecutor discussed the deterrent effect of the death penalty and stated, "[t]he death penalty, . . . it's the thing we're here for. That's the reason we're here." Trial tr. at 344. During his first-stage closing argument, the prosecutor appealed to jurors' sympathy for the victims by asking jurors to speculate about the deceased victim's final thoughts and to think of her begging for her life;

-21-

requested that jurors not compromise their position on the death penalty during their first-stage deliberations; and used the murder weapon to demonstrate the shooting of the victims. During his second-stage closing argument, the prosecutor allegedly resorted to "name-calling;" informed the jury it was his expertise that made the case a capital case; indicated he was proud of the evidence the State had presented; argued that a death sentence was the correct choice; pressured the jury with appeals to societal alarm and invoked sympathy for the victims; referred to the jurors' responsibility to spectators in the courtroom; encouraged jurors to make a statement regarding the victim's life; and personally attacked defense counsel and defense strategy.

After reviewing these comments in the context in which they were made, see Greer v. Miller, 483 U.S. 756, 765-66 (1987), and in light of the entire record, see Donnelly, 416 U.S. at 643, we cannot conclude that these remarks, alone or considered together, rendered petitioner's trial fundamentally unfair. See, e.g.,

Clayton, 199 F.3d at 1173-74. The state appellate court's decision denying petitioner relief on these claims, therefore, was not unreasonable.

## VI. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

### A. Procedural Default

Petitioner alleges several instances of trial counsel's ineffective representation, occurring during both the guilt and sentencing stages of trial. The Oklahoma Court of Criminal Appeals, in post-conviction proceedings, held that petitioner had procedurally defaulted these claims because he had not asserted them on direct appeal. See Pickens, 910 P.2d at 1068-69. Under English v. Cody, 146 F.3d 1257, 1264 (10th Cir. 1998), this procedural bar will be adequate to preclude federal habeas review if petitioner was represented by different attorneys at trial and on direct appeal and his claims could have been decided on the trial record alone.

Petitioner argues that, although he had different attorneys at trial and on direct appeal, those attorneys must be considered as one under English because they were members of the same public defender's office. This court has not yet resolved this issue. Nor do we do so here. Instead, we address the merits of petitioner's ineffective assistance of trial counsel claims, determining he is not entitled to habeas relief. See Boyd v. Ward, 179 F.3d 904, 913 n.1 (10th Cir. 1999), cert. denied, 2000 WL 198008 (U.S. Feb. 22, 2000) (No. 99-7369).

-23-

B.    Merits

In order to warrant habeas relief, petitioner must establish both that his attorney's representation was deficient and that he was prejudiced by counsel's deficient performance.    See Strickland v. Washington  , 466 U.S. 668, 687 (1984). This court may address these performance and prejudice components in any order, and need not address both if petitioner fails to make the requisite showing as to one.   See, e.g.  , Cooks , 165 F.3d at 1292-93.  Because the state courts did not address the merits of these claims, our review is de novo.       See LaFevers , 182 F.3d at 711.

In challenging the adequacy of counsel's performance, petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."      Strickland , 466 U.S. at 689 (quotation omitted).  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."       Id. at 690.

In order to establish prejudice resulting from deficient representation, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

1.    First stage

-24-

Petitioner asserts his attorney conceded guilt during the first stage of trial by failing to make an opening or closing argument, and by either failing to cross-examine the State's witnesses at all or doing so only superficially.

Counsel's performance in failing to make an opening or closing argument was not deficient, but rather was reasonable trial strategy. The evidence of petitioner's guilt was overwhelming and petitioner was unable to present any evidence in his defense. In light of that, it was not unreasonable strategy for counsel to forego opening argument in an attempt to maintain credibility with jurors for sentencing. See, e.g. , Clayton , 199 F.3d at 1177-78.

Further, defense counsel did not make a first-stage closing argument in a strategic attempt to preclude the government from offering any rebuttal argument. The trial court, in the exercise of its discretion, permitted the prosecutor to argue in rebuttal anyway. Nonetheless, defense counsel's strategy was not unreasonable. See Fox, 200 F.3d at 1296; see also Moore , 153 F.3d at 1099-1102, 1104-05 (waiver of closing argument in second stage).

Even if counsel's performance could be considered deficient, petitioner has failed to establish any prejudice resulting from the lack of an opening or closing argument. See Clayton , 199 F.3d at 1178; Moore , 153 F.3d at 1105.

Petitioner asserts counsel failed to cross-examine many of the government's first-stage witnesses and, when she did so, counsel cross-examined

them only superficially. Trial strategy includes determining how best to cross-examine witnesses. See Boyd, 179 F.3d at 915. With the exception of the surviving victim, petitioner fails to assert how counsel could have better cross-examined these witnesses. See Moore, 195 F.3d at 1179.

Petitioner does assert with particularity that trial counsel should have challenged the surviving victim's in-court identification of petitioner as the robber, as counsel had previously done during petitioner's preliminary hearing. Several days after the robbery, this victim, Earl Butler, identified petitioner from a photographic lineup shown to him in the hospital. Butler, however, admitted that, prior to this lineup, he had seen petitioner's picture in the newspaper. Petitioner asserts that trial counsel was additionally ineffective for failing to preserve a record of this hospital lineup for appellate review.

Petitioner was not prejudiced by counsel's failure to challenge Butler's hospital identification of petitioner or to preserve the lineup for appellate review. Immediately after the robbery, Butler was able to describe petitioner with precision, including his clothing and the car he was driving. This enabled the police to identify and apprehend petitioner within minutes of the robbery. When apprehended, petitioner had in his car the stolen money, postage stamps, and food stamps, all in a Circle K bag, along with a receipt from the Union Circle K that was robbed, a weapon and two pair of gloves he had purchased from that Circle

-26-

K while casing the store before the robbery. The evidence was overwhelming that petitioner committed the Union Circle K robbery. Therefore, there was "no reasonable probability the jury would have reached a different result" had defense counsel challenged this subsequent hospital identification procedure. Id. at 1179; see also Boyd, 179 F.3d at 915.

Further, counsel's decision not to challenge this identification vigorously was strategically reasonable. Counsel did challenge Butler's hospital identification at the preliminary hearing and in other pretrial hearings. Before the jury, however, Butler was a very compelling and sympathetic victim. Challenging Butler's hospital identification, particularly in light of his accurate description of petitioner immediately after the robbery, would only have served to discredit counsel in the jury's eyes, prior to sentencing. See, e.g., Clayton, 199 F.3d at 1177 (reasonable strategy, during first stage, for defense attorney to attempt to maintain credibility with jury for capital sentencing proceeding).

2.    Second stage

Where counsel's alleged errors occurred during a capital sentencing proceeding, the prejudice inquiry is "whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." Strickland, 466 U.S. at 695; see also Cooks, 165 F.3d at 1296 (requiring court to consider

-27-

strength of government's case and aggravating circumstances jury found to exist, as well as mitigating factors that might have been presented).

Petitioner asserts that trial counsel failed to investigate, prepare and effectively present mitigating evidence. Petitioner further asserts that, by failing to give the jury a complete picture of petitioner, counsel may have alarmed the jury into sentencing petitioner to death because he was "different."

Counsel does have a duty to conduct a reasonable investigation for mitigating evidence or make a reasonable decision that particular investigation is unnecessary. See, e.g. , Stouffer v. Reynolds , 168 F.3d 1155, 1167 (10th Cir. 1999). In a capital case, the attorney's duty to investigate all reasonable lines of defense is strictly observed. See Boyd, 179 F.3d at 915. On appeal to this court, however, petitioner fails to assert with any particularity what additional mitigating evidence counsel should have investigated and presented. See Hatch v. Oklahoma , 58 F.3d 1447, 1457 (10th Cir. 1995). The additional mitigating evidence mentioned by the district court was merely cumulative of that presented at sentencing. See Clayton , 199 F.3d at 1179. Petitioner, therefore, has failed to establish that counsel's second-stage performance prejudiced him.


VII. CONCLUSION


-28-

We AFFIRM the district court's denial of habeas relief from petitioner's first degree murder conviction. We REVERSE the denial of habeas relief from petitioner's death sentence and REMAND to the district court to grant the writ, conditioned upon the state court's conducting a new sentencing trial or commuting petitioner's sentence to life imprisonment or life imprisonment without parole.