**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 26, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DEMETRIO ESPINOZA-MENDOZA,

Defendant-Appellant.

No. 06-2185
(D.C. No. CR-06-609 MV)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **SEYMOUR**, and **ANDERSON**, Circuit Judges.

Demetrio Espinoza-Mendoza appeals his conviction on one count of

fraudulent possession of an alien registration-receipt card (RRC) in violation of

18 U.S.C. § 1546.  He contends that at trial (1) the prosecutor elicited testimony

and commented on his invocation of the right to remain silent; (2) defense

counsel was ineffective by not objecting to the use of his silence; and (3) there

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

was insufficient evidence that he knowingly possessed an RRC or knew that either of the RRCs in his possession was fraudulent. We affirm.

On December 15, 2005, Mr. Espinoza-Mendoza left work for an appointment with his probation officer. He was met at the probation office by immigration agents Veronica Franco and Raul Esparza. Although the agents were there in response to a call about "subjects . . . illegally present in the United States," R., Vol. 3 at 68, they eventually discovered two fraudulent RRCs in Mr. Espinoza-Mendoza's possession, and he was indicted for that offense.

At trial, Agent Franco testified that when she identified herself to Mr. Espinoza-Mendoza and told him she had "some questions regarding his status in the United States," he "became very angry" and said, "I've already talked to a group of people who help immigrants, and they told me that I don't have to tell you anything." R., Vol. 3 at 71, 72. When Agent Franco asked Mr. Espinoza-Mendoza if he was in the country legally, "he wouldn't answer . . . [h]e just kind of stayed quiet," *id.*, but then "admitted he was here illegally." *Id.* at 96.[1]

Agent Franco further testified that she and Agent Esparza then placed Mr. Espinoza-Mendoza in their van for transport to a "booking station." *Id.* at 113. Before leaving, Mr. Espinoza-Mendoza asked Agent Franco to retrieve his

---

[1]     Agent Esparza provided similar testimony, stating that when Agent Franco was questioning Mr. Espinoza-Mendoza at the probation office, he was "real uncooperative" and "didn't want to answer." *Id.* at 161.

wallet from his car. Agent Franco did so and inside found two fraudulent RRCs in an envelope.[2]

At the station, Mr. Espinoza-Mendoza was taken to a detention area, where he was *Mirandized*. *See Miranda v. Arizona*, 384 U.S. 436 (1966). He said that he understood his rights and he signed a *Miranda* form so indicating. Agent Franco testified she then showed him the cards and the following exchange occurred:

> I [Agent Franco] said, "Well, you know these are fake documents?["]
> [Mr. Espinoza-Mendoza answered,] "Well, I don't know.["]
> I said, "You know that these are fake resident alien cards?["]
> [Mr. Espinoza-Mendoza responded,] "Well, yeah. I guess.["]
> [I then stated,] "Okay. So, what are you doing with them?["]
> [Mr. Espinoza-Mendoza answered,] "Well, I was delivering them as a favor for a friend of mine."
>       . . .
> I said[,] ["W]ell, what's the name of your friend?["]
> [Mr. Espinoza-Mendoza answered,] ["]Well, I don't know.["]

R., Vol. 3 at 108-09. According to Agent Franco, Mr. Espinoza-Mendoza eventually identified the friend as "Carlos," *id.* at 109, and indicated that Carlos made the RRCs.

The only witness to testify for the defense was Mr. Espinoza-Mendoza's employer, Nick Ruiz. He testified that a "Carlos Cantu" also worked for him, and that around noon on December 15, he saw Mr. Espinoza-Mendoza and Carlos speaking, heard Mr. Espinoza-Mendoza tell Carlos, "Just put it in the car, put it in

---

[2]     Mr. Espinoza-Mendoza does not take issue with the search of his wallet.

my wallet," *id.* at 186, and he saw Carlos go to the car and put something "like a small envelope" inside. *Id.* at 181-82.

During closing arguments, the prosecutor urged the jury to "look at the defendant's demeanor, and what he said," *id.* at 220, and to consider that "when the agent first confronted the defendant, he was defiant." *Id.* at 229. The jury returned a guilty verdict, prompting this appeal.

Mr. Espinoza-Mendoza contends his conviction should be overturned because "the government elicited and received testimony that [he] asserted his constitutional right to remain silent and then used that assertion against him." Aplt. Br. at 25. We review for plain error because he did not make this objection at trial. *See United States v. Toro-Pelaez*, 107 F.3d 819, 827 (10th Cir. 1997) (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Portillo-Vega*, 478 F.3d 1194, 1202 (10th Cir. 2007) (quotation omitted).

It is well-settled that a prosecutor "may not use a defendant's exercise of his right to remain silent to obtain his conviction." *Pickens v. Gibson*, 206 F.3d 988, 998 (10th Cir. 2000) (quotation omitted). This rule generally applies to both pre-arrest and post-arrest silence. *See United States v. Burson*, 952 F.2d 1196, 1200-01 (10th Cir. 1991) (holding pre-arrest silence inadmissible as evidence of

guilt); *Earnest v. Dorsey*, 87 F.3d 1123, 1135 (10th Cir. 1996) (observing that "the government may not attempt to use [post-arrest silence] as substantive evidence of guilt").

Even if we assume the district court committed plain error by admitting testimony of Mr. Espinoza-Mendoza's refusal to discuss his immigration status and allowing the prosecutor's closing references to the same, his claim fails because he cannot satisfy the third prong of the plain error test. To satisfy this prong "the error must have affected the outcome of the district court proceedings." *United States v. Cotton*, 535 U.S. 625, 632 (2002) (quotation marks omitted). Two points convince us that the purported error did not effect the outcome here. First, Espinoza-Mendoza's uncooperativeness when initially questioned about his alien status is not relevant to his ultimate charge, possessing the illegal documents. The district court made this clear, instructing the jury "not to infer anything from Agent Franco's testimony regarding [Mr. Espinoza-Mendoza]'s citizenship. [He] is not charged with illegally being in the United States of America." R., Vol. 3 at 96. Second, uncontroverted evidence indicates Mr. Espinoza-Mendoza knowingly possessed the RRCs and knew they were fake. Agent Franco showed Mr. Espinoza-Mendoza the RRCs at the booking station, he admitted they were fake,[3] and said he was delivering them for Carlos, who had

---

[3]    Mr. Espinoza-Mendoza acknowledged the documents were inauthentic only after Agent Franco showed him the cards. He suggests this statement merely

(continued...)

made them. Moreover, Mr. Ruiz testified he overheard Mr. Espinoza-Mendoza tell Carlos to put "it," presumably the envelope carrying the RRCs, in his wallet in the car, where they were ultimately found by Agent Franco. In light of this overwhelming evidence, we are not persuaded the jury would have returned a different verdict in the absence of the disputed testimony and closing remarks.

Mr. Espinoza-Mendoza also claims that his counsel was ineffective for not objecting at trial to the use of his silence. Given our conclusion that Mr. Espinoza-Mendoza was not prejudiced by this omission, his ineffective assistance claim is meritless. *See, e.g., United States v. Smith*, 10 F.3d 724, 728 (10th Cir. 1993) (finding the record sufficiently developed to resolve appellant's claim of ineffective assistance of counsel on direct appeal).

Finally, the testimony of Agent Franco and Mr. Ruiz cited above dooms

---

[3](...continued)
relayed his present sense observation of the cards–that the documents were facially fake–and that his declaration therefore did not demonstrate he knew he possessed fake documents when Carlos put the envelope in his wallet. *See* Aplt. Br. at 24 ("The government never offered a scintilla of evidence that tended to demonstrate that the Defendant knew that the envelope contained fraudulent immigration cards."). But the agent testified she showed the cards to Mr. Espinoza-Mendoza in a bunch, and that she knew they were fake because the color and typeface were off, the thumbprints were the same on each card, and the photographs were taken with the subject's head at the wrong angle. R., Vol. 3 at 108, 115-16. These are not major flaws that, when shown "altogether," *id.* at 108, would be at all obvious to an illegal alien who doesn't posses his own legitimate documents. Espinoza-Mendoza's statement that the documents were fake can certainly be seen as evidence of his prior knowledge that the cards were inauthentic and not simply as relaying his impression of the documents as shown to him while in custody.

Mr. Espinoza-Mendoza's sufficiency of the evidence claim.[4]  *See United States v. Lauder*, 409 F.3d 1254, 1258-59 (10th Cir. 2005) ("We review the evidence in the light most favorable to the government to determine whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (quotation marks omitted)).

Accordingly, we AFFIRM.

Entered for the Court


Stephanie K. Seymour
Circuit Judge

---

[4]    Contrary to the government's assertion, Mr. Espinoza-Mendoza did preserve his evidence-sufficiency argument for *de novo* review on appeal by moving for acquittal at the close of the government's case and again after the close of all the evidence, R., Vol. 3 at 170, 189, 191. *See United States v. Radcliff*, 331 F.3d 1153, 1157 & n.1 (10th Cir. 2003); Fed. R. Crim. P. 29(a).