**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 24, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

COREY DUANE HAMILTON,

      Petitioner-Appellant,

v.

MIKE MULLIN, Warden, Oklahoma
State Penitentiary,

      Respondent-Appellee.

No. 04-5067

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. NO. CV-99-885-H(C))**

---

Robert W. Jackson (Steven M. Presson with him on the brief), Jackson & Presson,
P.C., Norman, Oklahoma, for Appellant.

Jennifer J. Dickson, Assistant Attorney General (W.A. Drew Edmondson,
Attorney General of Oklahoma, with her on the brief), Office of the Attorney
General, Oklahoma City, Oklahoma, for Appellee.

---

Before **TACHA**, Chief Judge, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

    This death penalty appeal arises out of the 1992 killings of four employees

of Lee's Famous Recipe Chicken Restaurant in Tulsa, Oklahoma. In the course of

a robbery in which Corey Hamilton participated, the employees were placed in a food locker and forced to kneel at gunpoint. Hamilton shot each in the head. A jury convicted Hamilton of four counts of first-degree murder and one count of robbery with a firearm.

At sentencing, the jury found four aggravating circumstances as to each murder. Accordingly, upon the jury's recommendation, the trial court imposed the death penalty. The Oklahoma Court of Criminal Appeals (OCCA) affirmed the murder convictions and death sentence on direct appeal but reversed the robbery conviction. *See Hamilton v. State*, 937 P.2d 1001 (Okla. Crim. App. 1997). The United States Supreme Court denied certiorari, *Hamilton v. Oklahoma*, 522 U.S. 1059 (1998), and the OCCA denied state post-conviction relief in an unpublished opinion. Subsequently, Hamilton filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Northern District of Oklahoma. The district court denied the petition but granted a certificate of appealability, *see* 28 U.S.C. § 2253(c)(1)(A).

On appeal, Hamilton argues five issues merit habeas relief: (1) prosecutorial misconduct during closing argument violated his right to a fair trial; (2) the state trial court's exclusion of testimony and jury instructions defining the life without parole sentencing option violated due process; (3) the trial court's failure to instruct the jury on use of victim impact evidence violated due process;

(4) the state presented insufficient evidence to support the heinous, atrocious or cruel aggravating circumstances; and (5) the individual errors at the guilt and sentencing phases together warrant reversal.

Our jurisdiction arises under 28 U.S.C. §§ 1291 and 2253. Having thoroughly reviewed the record and applicable law, we conclude Hamilton is not entitled to habeas relief. Accordingly, we affirm the district court's denial of the petition.

## I. Background

The background facts are not in dispute and are set forth in the OCCA's opinion on direct appeal. *See Hamilton*, 937 P.2d 1001. We only briefly summarize them here. On August 17, 1992, the bodies of Lee's employees Joseph Gooch, Theodore Kindley, Senaida Lara and Steven Williams were found in the restaurant's walk-in cooler. All four died of a close-range gunshot wound to the back of the head. On the evening of the murders, Hamilton and his accomplices discussed robbing the restaurant. They arrived at the restaurant near its scheduled closing time. Upon entering, Hamilton pulled a gun and told one employee to lock the doors. The other three employees were ordered to enter the cooler and kneel. A few minutes later, after Hamilton retrieved money from the restaurant safe, he placed the fourth employee in the cooler. Hamilton later stated to his accomplices that he shot the employees.

An Oklahoma jury convicted Hamilton of four counts of first-degree murder and recommended that the trial court impose the death penalty. The jury made its sentencing recommendation after finding four aggravating circumstances as to each murder: (1) Hamilton had knowingly created a great risk of death to more than one person; (2) each murder was especially heinous, atrocious or cruel; (3) Hamilton committed each murder for the purpose of avoiding or preventing a lawful arrest or prosecution; and (4) Hamilton would constitute a continuing threat to society.

## II. AEDPA Standard of Review

We begin our analysis by discussing the applicable standard of review under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d). We then proceed to the merits of Hamilton's claims.

Because Hamilton filed his § 2254 petition after AEDPA's 1996 effective date, its provisions apply to this appeal. *See Smallwood v. Gibson*, 191 F.3d 1257, 1264 (10th Cir. 1999). Under AEDPA, a federal court may grant habeas relief on a claim adjudicated on the merits by a state court only if the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court decision is "contrary to" Supreme Court precedent in two circumstances: (1) when "the state court applies a rule that contradicts the governing law set forth in [the Court's] cases"; or (2) when "the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from" that reached by the Court. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). A state court decision constitutes an "unreasonable application" of Supreme Court precedent if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Thus, "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411; *see also Thomas v. Gibson*, 218 F.3d 1213, 1219-20 (10th Cir. 2000) (discussing *Williams*).

Finally, a state prisoner seeking habeas relief based on alleged erroneous factual determinations must overcome by clear and convincing evidence the presumption of correctness afforded state court factual findings. *See* 28 U.S.C. §

2254(e)(1); *Smith v. Mullin*, 379 F.3d 919, 924-25 (10th Cir. 2004). With these standards in mind, we address each of Hamilton's claims of error.

### III. Discussion

Hamilton's death penalty trial was divided into two stages. The first stage required the jury to determine his guilt or innocence. The second stage required the jury to recommend a penalty. Hamilton argues the trial court committed error at both stages of his trial.

### A. Prosecutorial Misconduct

Hamilton makes one claim of error arising from the guilt phase of his trial. He argues that the government engaged in prosecutorial misconduct, citing a number of comments by the lead prosecutor during closing argument. Hamilton argues one statement disparaged his Fifth Amendment right to remain silent, and two additional statements wrongfully stripped him of the presumption of innocence. While two of the prosecutor's comments crossed the line of permissible closing argument, we agree with the OCCA that the statements as a whole did not undercut the fundamental fairness of Hamilton's trial.

When a defendant asserts claims of prosecutorial misconduct in a habeas petition, those claims are reviewed for a violation of due process. *See Patton v. Mullin*, 425 F.3d 788, 811 (10th Cir. 2005) (citing *Darden v. Wainwright*, 477 U.S. 168 (1986)). "[N]ot every trial error or infirmity which might call for

application of supervisory powers correspondingly constitutes a failure to observe that fundamental fairness essential to the very concept of justice." *Patton*, 425 F.3d at 811 (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). To be entitled to relief, a defendant must establish that the prosecution's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Patton*, 425 F.3d at 811 (citing *Donnelly*, 416 U.S. at 643). Such a determination may be made only after "tak[ing] notice of all the surrounding circumstances, including the strength of the state's case." *Coleman v. Brown*, 802 F.2d 1227, 1237 (10th Cir. 1986).

In some circumstances, however, when "prosecutorial misconduct directly affects a specific constitutional right," as is alleged here, "a habeas petitioner need not establish that the entire trial was rendered unfair, but rather that the [specific] *constitutional guarantee* was so prejudiced that it effectively amounted to a denial of that right." *Torres v. Mullin*, 317 F.3d 1145, 1158 (10th Cir. 2003) (emphasis added). With this guidance, we turn to the individual instances of misconduct alleged by Mr. Hamilton.

### 1. The Right to Remain Silent

The evidence at trial disclosed that a short time after the murders, Hamilton received a ride in a friend's car from his girlfriend's house to a motel. The motel

was next door. Discussing this evidence during his closing argument, the prosecutor rhetorically raised the following questions:

> [W]e ask you to use your common sense about people's behavior. What are they doing? What's he doing? What is the explanation for calling someone to take you across the street?

Tr. at 1202. Hamilton argues this statement was a comment on his Fifth Amendment right to remain silent, because the proffered questions could be answered only by Hamilton himself, and he had chosen not to testify.

Our precedent holds that "[t]he state may not use a defendant's exercise of his right to remain silent to obtain his conviction." *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995). *See also Battenfield v. Gibson,* 236 F.3d 1215, 1225 (10th Cir. 2001). Where a prosecutor's remarks "'concern matters that could have been explained only by the accused, . . . [they] give rise to an innuendo that the matters were not explained because [petitioner] did not testify' and, thus, amount to indirect comment on the defendant's failure to testify." *Battenfield*, 236 F.3d at 1225. (quoting *Pickens v. Gibson*, 206 F.3d 988, 999 (10th Cir. 2000)). Simply put, the question is "whether the language used [by the prosecutor] was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the defendant's right to remain silent." *Id.* at 1225 (quoting *Pickens*, 206 F.3d at 998). Nonetheless, any error in permitting the prosecutor to comment upon the defendant's right to silence is subject to a

harmless error analysis. *See Brecht v. Abrahamson*, 507 U.S. 619, 628-29 (1993).

We agree with the district court that the statement was permissible. A review of the context in which the prosecutor made the statements reveals he was discussing a particular jury instruction and was asking the jury to use their "common sense" regarding the defendant's flight. Following the statement to which Hamilton objects, the prosecutor continued, "The explanation is an obvious one. You don't want to be seen. Somehow or another you need to get a very short distance without anyone seeing you. And the police, as you know, were everywhere." Tr. at 1202. We further agree with the district court and the OCCA that the prosecutor's queries were entirely rhetorical and not, in essence, remarks "of such character that the jury would naturally and necessarily take it to be a comment on the defendant's right to remain silent." *United States v. Toro-Pelaez*, 107 F.3d 819, 826-27 (10th Cir. 1997) (quoting *United States v. May*, 52 F.3d 885, 890 (10th Cir. 1995)). Even if the comments crossed the line, our independent review of the record convinces us any prejudice arising from the statement was harmless, *see Brecht*, 507 U.S. at 628-29, and that the OCCA's resolution of the issue was not contrary to, or an unreasonable application of, clearly established federal law.

   **2. The Presumption of Innocence**

During closing argument, the prosecutor also made two statements regarding Hamilton's right to a presumption of innocence. In the first instance he said:

> When we started with this case, the defendant was presumed to be not guilty. You said you could do that. This evidence now strips the cloak of innocence from him.

Tr. at 1139. Counsel's objection to this statement was overruled. *Id.* Following these remarks, the prosecutor argued:

> Have we proved what we said we could prove? Yes. I submit to you, as I said a few minutes ago, the cloak of innocence is stripped away.

Tr. at 1168. Counsel's objection to this statement was also overruled. *Id.*

Hamilton argues that in *Miller v. State,* 843 P.2d 389, 390 (Okla. Crim. App. 1992), a previous case with similar prosecutorial remarks, the OCCA reversed the defendant's conviction. In *Miller*, the prosecutor stated, "[t]he dust is settled . . . and that cloak [of innocence] is gone. It's been ripped away from him by the testimony of three men—four men, actually. He stands guilty as charged." *Id.* Likewise, in one of our circuit cases, *Mahorney v. Wallman*, 917 F.2d 469 (10th Cir. 1990), the prosecutor stated, "I submit to you . . . under the law and under the evidence, that [the presumption of innocence] has been removed, that that presumption no longer exists, that that presumption has been removed by evidence and he is standing before you now guilty. That presumption is not there any more." *Id.* at 471.

In *Mahorney*, we held the comments violated the defendant's constitutional rights and were not harmless error. "[T]he jury," we explained, "was basically presented with two relatively credible, competing stories related by the complaining witness and the accused, neither of which was conclusively confirmed or disproportionately discredited by extrinsic evidence . . . [and] we cannot say that the constitutional infirmity in petitioner's criminal trial was harmless." *Id.* at 474.

Recognizing the objectionable nature of the remarks in light of its own precedent, the OCCA acknowledged in Hamilton's state appeal it had reversed other cases with similar commentary. The court went on to explain, however, "in light of the overwhelming uncontradicted evidence of guilt in this case," any error was harmless beyond a reasonable doubt. *Hamilton*, 937 P.2d at 1010 (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)). The OCCA further noted that the "jury was given specific instructions regarding the presumption of innocence." *Id.*

We recently had occasion to examine prosecutorial comments that were strikingly similar to the ones made here. In *Patton v. Mullin*, 425 F.3d 788 (10th Cir. 2005), the prosecutor said during the guilt phase:

> The Defendant is presumed innocent. He is presumed innocent until you consider all of the evidence in this case and you make the decision to strip that presumption away from him and leave him with what he is, which is guilty. What has to be proved to you before you can *strip that*

-11-

*cloak of innocence* from him is proof beyond a reasonable doubt of each and every material element of the crime charged and we talked about that. The State of Oklahoma always has the burden of proof. But we have the burden of proof to show you beyond a reasonable doubt each and every element of the crimes charged.

*Id.* at 812 (emphasis added). During the closing argument of the sentencing phase, the prosecutor also stated:

Mr. Patton is to be presumed innocent unless and until the State proves to you beyond a reasonable doubt one or more of the aggravating circumstances. And at that time you are authorized to strip that cloak away and punish this Defendant as he is worthy of being punished.

*Id.* In context, we found the prosecutor's comments plainly reminded the jury that it was the state's burden to prove its case beyond a reasonable doubt. In light of the prosecutor's recognition of that burden, and in light of the entire record in that case, "the OCCA did not unreasonably apply federal law in ruling that these comments did not deprive [defendant] of a fair trial." *Id.*

We have some similar contextual statements here. During the closing argument in Hamilton's trial, for example, the prosecutor stated:

Question, have we proved it? Counsel said you'll want to be able to walk up there and put your finger on it. I agree. Have we done that, though? Have I proved what I said we could prove? Has the evidence convinced you beyond a reasonable doubt that the man is guilty of these crimes? Yes.

Tr. at 1145.

The prosecutor also said:

-12-

I have no problem telling you this evidence is more than enough. It's beyond a reasonable doubt that this man is involved in the killing of these four people.

Tr. at 1169. Finally, we have the following instruction to the jury regarding the presumption of innocence:

The defendant is presumed innocent of the crime charged, and the presumption continues unless, after consideration of all of the evidence, you are convinced of his guilt beyond a reasonable doubt. The State has the burden of presenting the evidence that establishes guilt beyond a reasonable doubt. The defendant must be found not guilty unless the State produces evidence which convinces you beyond a reasonable doubt of each element of the crime.

Jury Instruction 1, ROA Vol. V at 711.

Even with these clarifications, the prosecutor's statements regarding presumption of innocence test the bounds of permissibility. This case is unlike *Patton*, where the prosecutor made abundantly clear the State of Oklahoma bore the burden of proof beyond a reasonable doubt. The statements here are closer to the facts of *Mahorney,* where we considered whether the presence of a jury instruction on the presumption of innocence mitigated the prejudice of improper prosecutorial comments. There, we determined that prejudice persisted despite the instruction because "the trial court's overall charge on the presumption of innocence and burden of proof was not sufficiently specific to preserve that presumption in light of the prosecutor's specific statement that it had been extinguished from the case." *Mahorney*, 917 F.2d at 473-74.

We need not reach the same conclusion in this context, however. Even if there were a due process violation, as with any constitutional error, we must still review for harmlessness. *See Pickens*, 206 F.3d at 998. The OCCA considered the circumstances at trial and determined that any error was harmless beyond a reasonable doubt due to the "overwhelming uncontradicted evidence of guilt[.]" *Hamilton*, 937 P.2d at 1010. We agree. On this record, the evidence against Hamilton is substantial. A number of eyewitnesses placed Hamilton in the getaway car. A co-conspirator identified Hamilton as the shooter. The car and murder weapon were recovered next to Hamilton's apartment. Accordingly, we cannot conclude the OCCA misapplied federal law in determining that the error was harmless beyond a reasonable doubt. *See Spears v. Mullin*, 343 F.3d 1215, 1232-33 n.14 (10th Cir. 2003) (In a federal habeas proceeding where a state court applied the harmless-beyond-a-reasonable-doubt standard set forth in *Chapman*, 386 U.S. at 24, "we must decide whether the state court's finding of harmless error was contrary to or an unreasonable application of *Chapman*").

In sum, Hamilton is not entitled to habeas relief based on statements made during the prosecutor's closing argument.

## B. Life Without Parole

Under Oklahoma law, a prisoner sentenced to life without parole is not entitled to be released from prison. Hamilton argues the state trial court violated

-14-

his right to due process at sentencing by denying his requests (1) to allow witness testimony, and (2) to submit an instruction explaining to the jury that he would not be parole-eligible. The OCCA rejected the claim on direct appeal. Interpreting the Supreme Court's holding in *Simmons v. South Carolina*, 512 U.S. 154 (1994), which requires juries to be informed about the option of life without parole, the OCCA concluded that defendants have no constitutional right to witness testimony or a jury instruction containing such information. *See Hamilton v. State*, 937 P.2d at 1011-12 (citing *Trice v. State*, 912 P.2d 349, 352 (Okla. Crim. App. 1996)). Hamilton claims the OCCA's conclusion is contrary to or represents an unreasonable application of *Simmons* and more recent Supreme Court cases explaining its holding.[1] We disagree.

The Supreme Court in *Simmons* addressed whether due process required a state trial court "to instruct the jury in the penalty phase of a capital trial that under state law the defendant was ineligible for parole." *Simmons,* 512 U.S. at 156 (plurality opinion). The Court concluded that due process required such an instruction, but only under narrow circumstances: "[w]here the State puts the defendant's future dangerousness in issue, and the only available alternative

---

[1] At oral argument, Hamilton's counsel stated that the excluded evidence also violated his right to present mitigating circumstances under the Supreme Court's holding allowing such evidence. *See Skipper v. South Carolina*, 476 U.S. 1, (1986). This claim fails for the same reasons as Hamilton's life without parol argument.

sentence to death is life imprisonment without possibility of parole, due process entitles the defendant to inform the capital sentencing jury – by either argument or instruction – that he is parole ineligible." *Id.* at 178 (O'Connor, J., concurring in the judgment). The Supreme Court has reinforced this holding in subsequent cases. *See Shafer v. South Carolina*, 532 U.S. 36, 51 (2001) (holding that whenever future dangerousness is at issue in a capital sentencing proceeding, due process requires the jury be informed a life sentence carries no possibility of parole); *Kelly v. South Carolina*, 534 U.S. 246 (2002) (where the state places a defendant's future dangerousness at issue in seeking the death penalty, the jury must be properly instructed as to the possibility of life without parole).

We have already examined Oklahoma's capital sentencing scheme in the wake of *Simmons* and subsequent Supreme Court authority. In *Mayes v. Gibson*, 210 F.3d 1284 (10th Cir. 2000), we held that Oklahoma's three-option sentencing scheme—(1) death, (2) life imprisonment without the possibility of parole, or (3) life imprisonment—are consistent with the Supreme Court's rulings since the options do not create a "false choice between sentencing petitioner to death and sentencing him to a limited period of incarceration." *Id.* at 1294. It is enough that the jury is provided the three choices. Providing further explanation, in *Mollett v. Mullin*, 348 F.3d 902, 909-10 (10th Cir. 2003), we held that due process concerns arise under *Simmons* only when four factors are met: "(1) the prosecution seeks

the death penalty; (2) the prosecution places the defendant's future dangerousness at issue; (3) the jury asks for clarification of the meaning of "life imprisonment," or a synonymous statutory term; and (4) the judge's response threatens to cause a jury's misunderstanding so the jury will perceive a false choice of incarceration when future dangerousness is at issue." *Mollett*, 348 F.3d at 914 (internal citations and quotations omitted).

Recognizing he can meet only the first two of these factors, Hamilton acknowledges his claim does not satisfy *Mollett*. Instead, he asserts our cases misconstrue the Supreme Court's holding in *Kelly v. South Carolina*, *supra*, and should be revisited. In *Kelly* (construing South Carolina law), the Supreme Court reversed a death sentence where the trial court did not adequately explain parole eligibility when the prosecutor raised the defendant's future dangerousness. We disagree with Hamilton's argument for two reasons. First, the *Mollett* court in fact examined Oklahoma's three-option sentencing scheme in light of *Kelly* and found it inapplicable. *Mollett*, 348 F.3d at 912 n.3, 914-15, 917, 921 n.6. Importantly, unlike in *Kelly*, Oklahoma's jury instructions provide a "without parole" option for the jury's consideration. Second, Hamilton points to nothing in the record on appeal that would suggest jury confusion. Without some reason to believe the jury actually was misled, Hamilton suggests a nearly per se presumption of confusion. Our prior cases foreclose that result.

Two final considerations influence our conclusion. First, our review of the record shows that Hamilton's counsel never sought to argue the implications of the life without parole option during closing argument. The court's earlier preclusion of witness testimony did not necessarily preclude comment at the argument stage. Additionally, the record discloses that Hamilton's counsel made a variation of this argument by stating, "Cory Hamilton is going to die in the penitentiary." This could only suggest to the jury that the life without parole option would keep him in prison until death.

In the end, Hamilton's argument is, at best, a matter for our en banc review or certiorari review by the Supreme Court. Under existing precedent, capital defendants must show that the jury asked for clarification of the meaning of life imprisonment or the judge's instructions created the possibility of jury misunderstanding. Since Hamilton cannot establish either element, the OCCA's decision does not unreasonably apply Supreme Court law. He is therefore not entitled to habeas relief on this issue.

## C. Victim Impact Evidence

Hamilton next argues that the failure of the trial court to instruct the jury on how to use victim impact evidence during its sentencing deliberations violated due process. At trial, Hamilton did not request such an instruction. Nor did he object to the trial court's failure to give such an instruction. On direct appeal to

the OCCA, Hamilton argued the absence of the jury instruction constituted structural error—an error so fundamental to the trial process that a retrial is required. *See Hamilton v. State*, 937 P.2d at 1011. Rejecting the structural error argument, but agreeing that the instruction was nonetheless "trial error," the OCCA concluded "the fact that the jury found four aggravating circumstances is sufficient to find the error harmless beyond a reasonable doubt." *Id.*

Abandoning the structural error argument on appeal, Hamilton argues that the OCCA's harmless error determination was unreasonable as a matter of federal law. He claims the absence of an instruction allowed the jury to rely on the victim impact evidence to bolster its findings of four aggravating circumstances. In support of this argument, Hamilton points to the fact the OCCA in a subsequent case established that jury instructions are necessary to clarify the difference between victim impact evidence and evidence of aggravating circumstances. *See Cargle v. State*, 909 P.2d 806, 828-29 (Okla. Crim. App. 1995). Under the new requirement, jurors must consider

> victim impact evidence in determining the appropriateness of the death penalty only if you first find that the existence of one or more aggravating circumstance has been proven beyond a reasonable doubt by evidence independent from the victim impact evidence, and find that the aggravating circumstance(s) found outweigh the finding of one or more mitigating circumstances.

*Id.* at 829.

In sum, Hamilton argues the victim impact evidence improperly prejudiced the jury's weighing of the evidence as to each of the four aggravating circumstances. Since the OCCA rejected Hamilton's arguments on the merits, our review is directed to whether its decision was inconsistent with federal law.[2]

The Supreme Court has made clear that "[a] State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed. There is no reason to treat such evidence differently than other relevant evidence is treated." *Payne v. Tennessee*, 501 U.S. 808, 827 (1991). In the majority of cases, such evidence "serves entirely legitimate purposes." *Id*. at 825. But in some cases, victim impact evidence could be "so

---

[2] At the federal district court level, Hamilton argued that the inflammatory nature of the victim impact testimony violated his due process rights under *Payne v. Tennessee*, 501 U.S. 808 (1991). The district court found (1) the claim was procedurally barred, and (2) Hamilton had not asserted sufficient grounds to excuse that bar. On appeal, Hamilton does not challenge the district court's determinations concerning the applicability of the procedural bar. Instead he simply reasserts the claim that the substance of the evidence violated the Constitution. To the extent Hamilton seeks to have us review the constitutionality of the substance of the admitted evidence, we are precluded from doing so. *See Turrentine v. Mullin*, 390 F.3d 1181, 1206 (10th Cir. 2004) ("Generally, where a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can show either cause for the default and actual prejudice, or, alternatively, that failure to consider the claims will result in a fundamental miscarriage of justice." (internal quotations and citation omitted)). We will, however, look to the substance of the evidence to the extent it is necessary to assess the OCCA's harmless error analysis.

unduly prejudicial that it renders the trial fundamentally unfair" in violation of the due process clause of the Fourteenth Amendment.  *Id*.  Hamilton argues the victim impact evidence presented exceeded the bounds permitted by the Supreme Court. [3]

The OCCA concluded that no jury instruction was required.  Hamilton did not ask for one; the jury moreover received detailed instructions as to how to consider the aggravating factors in their deliberations.  The court then concluded "[i]n this case, the fact that the jury found four aggravating circumstances is sufficient to find the error harmless beyond a reasonable doubt." *State v Hamilton*, 937 P.2d at 1011.

We agree with the district court that even if we accept Hamilton's contention that the jury inappropriately considered the victim testimony in the context of finding aggravating circumstances, any error was harmless.  At worst, the evidence characterized the crime in a way that could have influenced a finding only as to two of the four aggravating factors:

> (1) the murders were especially heinous, or

---

[3] For instance, one relative of a victim testified "God only knows the fear and sheer terror and pain and the intense agony those last few moments of his life brought him.  How . . . cold he must have been in that freezer." Tr. at 1243. Another testified "There is no greater crime than murder.  It violates very human right." Tr. at 1244.  A third described one of the killings as "senseless" and stated one of the victim's "was shot in the head like an animal and killed in cold blood without mercy." Tr. at 1247.

(2) Hamilton could constitute a continuing threat to society.

The evidence could not have influenced a finding as to the other two aggravators:

> (3) Hamilton knowingly created a great risk of death to more than one person, and

> (4) that he committed the murders for the purpose of avoiding or preventing a lawful arrest or prosecution.

We therefore cannot conclude the OCCA unreasonably applied federal law. The absence of a victim impact jury instruction, even if constitutionally necessary, was harmless.

## D. Aggravating Circumstances

Hamilton's last challenge to the penalty phase of his trial contests the sufficiency of the evidence presented at trial in support of one of the four aggravating circumstances found by the jury. Under Oklahoma law, a jury is entitled to consider the "especially heinous, atrocious or cruel" circumstances of the crime. Okla. Stat. tit. 21 § 701.12.4. Hamilton asserts the prosecution failed to present sufficient evidence of conscious physical suffering by the victims or "extreme mental cruelty" as required by the aggravator. At trial, the jury found the aggravator with respect to all four victims.

When reviewing the sufficiency of the evidence on a habeas corpus petition, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)(emphasis in original). This standard reflects the "longstanding principle that it is the jury's province to weigh the evidence and to draw reasonable inferences from testimony presented at trial." *Turrentine v. Mullin*, 390 F.3d 1181, 1197 (10th Cir. 2004). Our review under this standard is "'sharply limited' and a court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting *Wright v. West*, 505 U.S. 277, 296-97 (1992)).

The OCCA rejected Hamilton's sufficiency challenge on the merits, and we look to AEDPA for the appropriate degree of deference to the state court decision. We have not yet settled whether a challenge to the sufficiency of the evidence on a habeas petition is a question of fact or a question of law, and therefore whether 28 U.S.C. § 2254(d)(1) or § 2254(d)(2) should apply. *See Turrentine,* 390 F.3d at 1197; *Moore v. Gibson*, 195 F.3d 1152, 1176-77 (10th Cir. 1999); *Torres v. Mullin*, 317 F.3d 1145, 1151 (10th Cir. 2003). Section 2254(d)(1) governs questions of law and requires us to determine whether the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal Law." Section 2254(d)(2), in contrast, applies to

questions of fact and asks whether the state court decision was "based on an unreasonable determination of the facts in light of the evidence presented." Despite the lack of clarity in this area, "we need not decide [the] question here because [the defendant] is not entitled to habeas relief under either standard." *Dockins v. Hines*, 374 F.3d 935, 939 (10th Cir. 2004).

When applying the Supreme Court's sufficiency standard in *Jackson*, we look to Oklahoma substantive law to determine the elements of the "heinous, atrocious, or cruel" aggravator. *See, e.g., Turrentine*, 390 F.3d at 1197. Under Oklahoma law the aggravator "requires proof that the death was preceded by torture or serious physical abuse." *Id.* The OCCA has determined that the "torture" element of this aggravating factor "may take any of several forms," including "the infliction of either great physical anguish or extreme mental cruelty." *Berget v. State*, 824 P.2d 364, 373 (Okla. Crim. App. 1991). The OCCA has also concluded there are no "specific, uniform criteria, applicable to all murder cases, which would make the application of the 'heinous, atrocious or cruel' aggravator a mechanical procedure." *Robinson v. State*, 900 P.2d 389, 401 (Okla. Crim. App. 1995). "Rather, the examination of the facts of each and every case is necessary in determining whether the aggravator was proved." *Id*. As we noted in *Turrentine*, "[t]his rule necessarily makes the determination a case by case inquiry." *Turrentine*, 390 F.3d at 1197-98 (citations omitted).

In its review of this case, the OCCA addressed whether the evidence supported the death penalty and explained that "the murder was especially heinous, atrocious or cruel, in that the employees were forced to kneel in the back room uncertain of their fate, while each but the first listened to his co-workers being killed." *Hamilton*, 937 P.2d at 1014. Accordingly, "[t]he evidence substantially supports the finding of the four aggravators." *Id.* The court also noted "that [Hamilton] knew some of the workers and the location. He did not use any cover-up; he intended to kill." *Id.* Our independent review of the record supports the OCCA's conclusion that Hamilton inflicted extreme cruelty on his victims before he killed them.

The prosecution in this case did not attempt to argue, through medical testimony or otherwise, that the victims in this case were subjected to serious physical abuse. With this limitation, we examine the evidence solely for evidence of mental torture. We have previously stated that the evidence must support anguish that goes beyond "that which necessarily accompanies the underlying killing." *Jones v. Gibson*, 206 F.3d 946, 953 (10th Cir. 2000). To that end, "[e]vidence that the victim was conscious and aware of the attack supports a finding of torture." *Id.* (citing *Le v. State*, 947 P.2d 535, 550 (Okla. Crim. App. 1997); *Hooks v. Ward*, 184 F.3d 1206, 1240 (10th Cir. 1999); *Neill v. State*, 896 P.2d 537, 556 (Okla. Crim. App. 1994). While Oklahoma law regarding the

element of torture is rather unclear regarding required time frame, [4] Oklahoma courts do require that "[a]nalysis must focus on the acts of the defendant toward the victim and the level of tension created." *Cheney v. State*, 909 P.2d 74, 80 (Okla. Crim. App. 1995). The OCCA has also held that "conscious[ness] . . . is the critical inquiry in determining whether a murder was especially heinous, atrocious or cruel." *Spears v. State*, 900 P.2d 431, 443 (Okla. Crim. App. 1995). *See also Jones v. Gibson,* 206 F.3d at 953 (10th Cir. 2000).

The OCCA has also recognized that the presence of fellow victims in a multiple homicide, with each of the victims realizing they might be the next to die, satisfied the heinousness requirement. In *Neill v. State*, 896 P.2d 537, 556 (Okla. Crim. App. 1994), for example, the defendant took three women to the back of a bank and stabbed each to death. The OCCA found sufficient evidence for the aggravator in part due to physical suffering, but also because at least two of the three victims witnessed the brutal attacks on their co-workers before the killer turned to them. A fourth victim was placed in the same room after the murders, before he was shot in the head. In finding that the conduct constituted

---

[4] *See Jones v. Gibson,* 206 F.3d 946, 953 (10th Cir. 2000) (comparing *Turrentine v. State*, 965 P.2d 955, 976 (Okla. Crim. App. 1998) ("[t]he length of time which the victim suffers mental anguish is irrelevant"), with *Washington v. State*, 989 P.2d 960, 975 (Okla. Crim. App. 1999) ("[t]he mental torture element is confined to cases in which the victim is terrorized for a significant period of time before death"). Ultimately this apparent discord is irrelevant, as the OCCA itself has interpreted Oklahoma law to determine the application of the aggravator was appropriate in this case.

-26-

mental torture, the OCCA concluded, "[m]ental anguish includes the victim's uncertainty as to his ultimate fate." *Id.* at 556. That same uncertainty is fully met here. Finally, we are instructed by our decision in *McCracken v. Gibson*, 268 F.3d 970, 982 (10th Cir. 2001). In that decision, we upheld a finding of aggravation where the third and fourth victims of a quadruple homicide heard two other victims shot first and likely feared they would be next.

Hamilton counters this authority with the OCCA holding in *Davis v. State*, 888 P.2d 1018 (Okla. Crim. App. 1995). In *Davis*, the court determined the evidence insufficient where two victims died of gunshot wounds but the "evidence could not predict either victim's time of death or the order in which wounds were inflicted." *Id.* at 1021. Along these lines, in *Crawford v. State*, 840 P.2d 627, 640-41 (Okla. Crim. App. 1992), the OCCA found insufficient evidence to support the aggravator based on physical abuse where there was no indication whether blunt force injuries or strangulation occurred first, no evidence as to the level of suffering, and no evidence whether the victim was alive when put into a car trunk. The OCCA concluded "[a] record so bereft of evidence leads only to speculation and not to the rational drawing of reasonable inferences." *Id*. at 641. The murders here require none of the attenuated guesswork necessary in *Davis* and *Crawford*. Although it is true the record does not disclose how much time passed between the death of each victim, or how long each victim was subject to

mental torture, what we do know amply supports the aggravator. For example, all were in the back cooler for at least ten minutes on their knees at gunpoint. At least two of the victims knew Hamilton's identity and were therefore aware that his failure to wear a disguise suggested his intention to kill. Such a natural suspicion would have been confirmed after Hamilton murdered the first victim. And three witnessed the execution-style death of at least one other victim. Under this aggravator, it is not required that every victim know his fate to a *certainty*. In fact, *uncertainty* is often an aspect of cruelty inflicted upon victims. *See Neill*, 896 P.2d at 556. It is enough that the evidence of mental cruelty disclose that each victim likely experienced mental anguish at the hands of the defendant.

On this record, the jury's finding of the "heinous, atrocious or cruel" aggravator in this case was reasonable. The OCCA's decision, therefore, was neither contrary to nor an unreasonable application of federal law; nor was it based on an unreasonable determination of the facts in light of the evidence presented. Habeas relief on this ground is accordingly denied.

### E. Cumulative Error

Hamilton's final argument is that the cumulative effect of trial errors in this case justifies habeas relief. The OCCA rejected this claim because it found any errors to be harmless. *See Hamilton*, 937 P.2d at 1013 ("in as much as we found all other errors to be harmless beyond a reasonable doubt, we find no cumulative

-28-

error requiring reversal"). The district court agreed, finding that since it rejected each of Hamilton's claims, there were no errors to aggregate.

Contrary to the OCCA's analysis, however, our cases explain that "[c]umulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Workman v. Mullin*, 342 F.3d 1100, 1116 (10th Cir. 2003). The OCCA therefore erred by failing to engage in cumulative error analysis. The very point of such a review, is to examine all the actual errors which are *individually* harmless to determine if *together* they render the defendant's trial unfair. *See Cargle v. Mullin*, 317 F.3d 1196, 1207 (10th Cir. 2003) (explaining that "to deny cumulative-error consideration of claims unless they have first satisfied their individual substantive standards for actionable prejudice would render the cumulative error inquiry meaningless, since it would be predicated only upon individual error already requiring reversal") (internal quotations and citations omitted).

Because the OCCA did not consider in the aggregate the prejudicial effect of the individual errors, we review Hamilton's cumulative error claim de novo. *See Malicoat v. Mullin,* 426 F.3d 1241, 1263 (10th Cir. 2005) ("the OCCA's opinion does not clearly indicate that it considered, in the aggregate, the

prejudicial effect of the individual errors[;] [a]ccordingly . . . we afford [the defendant] the benefit of the doubt and review his cumulative error claim de novo"). We thus consider whether the two *possible* errors we identified in the trial – (1) whether the "cloak of innocence" statements (a first stage error), and (2) the lack of instructions on victim impact evidence (a second stage error) – together rendered the trial unfair. In assessing cumulative error, only first stage errors are relevant to the conviction, but all errors are relevant to the ultimate sentence. *Darks v. Mullin*, 327 F.3d 1001, 1018 (10th Cir. 2003).

Even under the de novo standard, we conclude Hamilton has failed to demonstrate the cumulative effect of the individual errors deprived him of a fair trial. In light of the overwhelming evidence against him, we see nothing to suggest the prosecutor's remarks influenced the jury's finding of guilt. The lawyer's rhetorical flourish at closing pales in comparison to the physical and testimonial evidence of guilt introduced at trial. Likewise, the omission of a victim impact instruction in the context of the instructions as a whole also could only have minimally affected the jury's consideration of the aggravated nature of the quadruple homicide. Moreover, the victim impact evidence bore on only two of the four aggravating circumstances found by the jury, any one of which was sufficient to support the death penalty. Even together, the weight of these alleged errors did not rob Hamilton of a fair trial.

-30-

We thus conclude Hamilton has failed to establish that individual harmless errors should collectively justify habeas relief.

## IV.  Conclusion

Accordingly, for the reasons set forth above, we AFFIRM the district court's decision denying Mr. Hamilton's 28 U.S.C. § 2254 petition for a writ of habeas corpus.